## Titus *vs.* Himrod, survivor &c.

Damages sustained by the makers of a promissory note, in consequence of the breach of an agreement by the payees to apply the proceeds of a consignment of wheat to the payment of such note, cannot be set off nor made the subject of a counter-claim, in an action brought upon a subsequent note, given by the same-makers, to the payees of the first, and transferred to the plaintiff after maturity; the first note having been collected, and the second being a new and independent security and resting on a distinct consideration.

APPEAL from a judgment entered upon the report of a referee, dismissing the plaintiff's complaint. The referee found the following facts :

John De Mott, in the year 1852, was engaged in consigning wheat to Jones, Himrod & Titus, a mercantile firm in the commission business in the city of New York, to be sold by them on his account, and upon which he received from them advances. To protect Jones, Himrod & Titus, De Mott had placed in their hands a promissory note for $2500, signed by himself and Swarthout as security. This note fell due on the fourth day of August, 1852, and not being paid was duly protested. Before its maturity, this note had been negotiated by Jones, Himrod & Titus to Peter H. Titus, the plaintiff in this action, for value. About the 19th of October, 1852, De Mott consigned to the said Jones, Himrod & Titus, a boat load of wheat of about 2800 bushels, and by letter of that date, addressed to Jones, Himrod & Titus, informed them that the wheat was sent to meet the above note then under protest. By a letter dated the 22d day of October, 1852, addressed to De Mott, Jones, Himrod & Titus acknowledged the receipt of the above letter ; agreed to apply the proceeds of the said wheat (if sufficient) to the payment of the said note. The wheat was sold on the 27th day of October, 1852, at $1.08 per bushel, and on the next day, Jones, Himrod & Titus addressed a letter to De Mott apprising him of the fact and informing him that with the pro-

ceeds of this wheat they would pay the note as directed and credit his account with the balance. The proceeds of the wheat were sufficient to pay this note. Jones, Himrod & Titus did not take up the note in question, but carried the proceeds of the said wheat to De Mott's credit on general account. At the time of these transactions Jones, Himrod and Titus were the holders of another note for $2500, made by De Mott, with Swarthout as surety, and which would mature on the 13th of January, 1853. At the time of obtaining this note, Jones, Himrod & Titus agreed to renew the same at maturity. On or about the 13th of January, 1853, De Mott applied to Swarthout to sign his name as surety to another note for $2500, in renewal of the one falling due on that day, informing him that the previous one, which had fallen due on the 4th of August, had been paid by the boat load of wheat above referred to. Swarthout relying on this assurance, signed the said note as surety, and the same was given to Jones, Himrod & Titus. The said note being the one upon which this action was brought. On or about the 21st of April, 1853, De Mott made an assignment to the defendant and one Eastman, of all his property, for the benefit of all his creditors, preferring in the first class of creditors the said Swarthout, for all moneys due to him, and for all liabilities incurred as his surety or for his accommodation, which should prove to be valid and subsisting claims and demands against Swarthout. The said Peter H. Titus, the holder of the note protested on the 4th of August, 1852, in an action brought by him upon said note, recovered a judgment therein in this court, against De Mott and Swarthout, on the 24th of February, 1854, for $2948.65, and said judgment was afterwards paid by De Mott's assignees. The assignees made sundry payments to Jones, Himrod & Titus on the said note, dated January 13, 1853, and that firm, on the 28th day of May, 1856, transferred said note to Peter H. Titus, the present holder of the same. The defendant, as

surviving assignee, has in his hands sufficient assets to pay the amount still remaining due on the said note.

Upon the foregoing facts, the referee found, as conclusions of law : *First.* That the agreement made by Jones, Himrod & Titus to take up the note indorsed by Swarthout, and which fell due on the 4th of August, 1852, was a valid and enforceable agreement by said Swarthout, and that by the failure of Jones, Himrod & Titus to perform said agreement Swarthout had a right of action against said Jones, Himrod & Titus. *Second.* That at the time of the execution and delivery of the assignment by De Mott, for the benefit of his creditors, the note in this action, signed by Swarthout as surety, and then being due and payable, was not a valid and subsisting claim in the hands of Jones, Himrod & Titus, as against the said Swarthout, and that said note having been transferred to the plaintiff in this action long after its maturity, and after the execution and delivery of the said assignment, it was taken and received by him subject to all the equities in favor of said Swarthout. That the assignees of De Mott, trustees for his several creditors, are entitled to have enforced in their favor any defense which Swarthout could have made if an action had been brought against him to recover the amount of the said note. And finally, for the reasons aforesaid, that the plaintiff was not entitled to the relief prayed for in this action. Wherefore he directed judgment that the complaint be dismissed with costs.

*George Bowman*, for the appellant.

*John E. Seelye*, for the respondent.

*By the Court*, MULLIN, J. This action is brought against the defendant as surviving assignee, under a general assignment made by John De Mott to Peter Himrod and John L. Eastman, to recover the balance due on a promissory note

made by said John De Mott as principal and Ralph Swart-hout as surety, for the sum of $2500, to the order of Jones, Himrod & Titus, payable at the Bank of Commerce in the city of New York, at four months from date, and dated the 13th of January, 1853. The defendant, after admitting some and denying other allegations of the complaint, sets up by way of affirmative defense, that in March, 1852, the said De Mott and Swarthout made and delivered to Jones and others above named, a note for the sum of $2500, payable at four months at the Bank of Commerce. The payees trans-ferred the said note before maturity to the plaintiff in this suit, but such transfer was not known, until long afterwards, to the said makers, or to Eastman. That in October, 1852, Mott, the principal debtor, consigned to the payees 2600 bushels of wheat, to be sold and the proceeds applied in pay-ment of the note of March, 1852. The wheat was received and sold, but the proceeds were not applied in payment of the said note. On the contrary, the plaintiff in this suit, who held said last mentioned note, prosecuted the same to judgment and collected the same from the assignees of Mott. The answer further alleges that said Jones and others have never accounted for the proceeds of said wheat, but are still indebted for the same, and that such proceeds were in their hands as a fund applicable to and which did extinguish the note on which this action is brought. It is further alleged that the note in suit was wrongfully transferred to the plain-tiff, after maturity, for the purpose of defrauding certain cred-itors of said Mott. The answer sets up a counter-claim for certain property consigned to said Jones and others in Octo-ber, 1854, amounting to $50, and which Himrod and Titus, two of said firm, agreed to apply on said note.

In order to the better understanding of the case it is neces-sary to refer to some other facts proved on the trial. For some years prior to the giving of the note in suit, Jones, Himrod & Titus, merchants residing and doing business in this city, had been receiving property from De Mott, one of

the makers of said note, who resided at Lodi, in the county of Seneca in this state, and selling the same on commission, and advancing to said De Mott on property so consigned. Jones and others were at all times, it would seem, during their dealing with De Mott, largely in advance to him. On the 12th of February, 1852, their account rendered shows a balance due to them of $22,735.23, and on the 11th of January, 1853, the balance due them was $22,926.83. In addition to the property consigned as security to the said Jones and others, De Mott assigned to them certain bonds and mortgages, and gave them notes signed by said Swarthout as surety. After disposing of all these collaterals, and applying all payments, there is still due to said Jones and others something over $7000.

The defendant is one of the assignees of De Mott in the assignment made to them for the benefit of the creditors of said De Mott. By this assignment Swarthout is preferred for all sums for which he is liable for said De Mott, and it is conceded that if this note in suit is a valid debt against Swarthout, the defendant has ample means in his hands with which to pay it. The assignees have already made several payments upon it, the last on the 25th of November, 1854.

The referee dismissed the complaint on two grounds; 1st. That Jones and others, by failing to apply the proceeds of the wheat specifically consigned to pay the note of March, 1852, became liable to Swarthout for damages equal to the amount of the note, and as these damages were an equitable set-off in favor of Swarthout against the said Jones and others, and as the plaintiff acquired title after maturity, he took the note subject to such set-off; 2d. That the liability of Jones and others to Swarthout, for damages, may be treated as an additional fund held by Swarthout for his security; and the other creditors of De Mott, having only one fund to resort to for the payment of their debt, may require Swarthout who has two, to resort to the one which the other creditors have not, to obtain payment of his claim.

The note of March, 1852, was a valid security in the hands of Jones and others at the time of its transfer to the plaintiff, De Mott owing them a very large amount at that time. The transfer to the plaintiff before maturity, of that note, made him a bona fide holder for value, and he held it discharged of defenses which might otherwise have been interposed to it had it remained in the payee's hands. As between them and De Mott, the note would have been paid on the sale of the wheat specifically consigned for that purpose. But when these proceeds were realized they did not own the note, and they neglected to pay it to the plaintiff. Payment of that note was enforced by due process of law. It may be conceded that Jones and others became liable to De Mott for such damages as he may have sustained by the neglect to pay and take up that note. But I am wholly unable to perceive how Swarthout acquired any interest in those damages. The contract, if there was one, was with De Mott alone, and passed by his assignment, to the defendant. Swarthout has never had any right of action against Jones and others. Neither do I perceive any connection between the notes of March, 1852, and January, 1853. The former was paid in full, and the latter is a new and independent security and resting on a distinct consideration. There is no mode by which the breach of contract of Jones and others, to pay the first note, can be made available against the note in suit. The damages for the breach of such contract were unliquidated and not the subject of set-off; and they are not set up by way of counter-claim. But if a counter-claim was properly set up it would not be a defense to this action. If the damages for the breach of the contract were available and established they should be applied in satisfaction of an equal amount of the balance due from De Mott to them, and not in satisfaction of the note in suit.

It seems to me that upon no principle of either law or equity can the plaintiff's claim be defeated upon either of the grounds taken by the referee; because, 1st. The damages are not the subject of counter-claim against the plaintiff, and

The People *v.* Keyser.

2d. Swarthout has never repudiated his liability on the note, or in any way authorized the defendant to refuse the payment of the balance due on said note.

Having paid so large a part of the note after full knowledge of all the facts in the case, it is merely captious now to resist the payment of the balance.

The judgment must be reversed and a new trial ordered; costs to abide the event.

[NEW YORK GENERAL TERM, May, 4, 1863. *Sutherland, Clerke* and *Mullin,* Justices.]